UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LASZLO MESZAROS and
ROBERT H. FRITZINGER,

                              Plaintiffs,

        v.                                          **DECISION AND ORDER**
                                                    09-CV-765S

STEPHEN KLICK,
DOUGLAS KEGLER, and
COLLABORATEMD, INC.,

                              Defendants.

# I. INTRODUCTION

Plaintiffs Laszlo Meszaros and Robert H. Fritzinger bring suit against Defendants

Stephen Klick, Douglas Kegler, and CollaborateMD, Inc. ("CollaborateMD") claiming

violations of 17 C.F.R. § 240.10b-5, as well as state law claims for fraud and deceit, breach

of fiduciary duty, breach of implied covenant of good faith and fair dealing, unjust

enrichment, indemnification, breach of contract, and quantum meruit.  Plaintiffs' claims

arise out of Defendants' purchase of Plaintiffs' stock and Defendants' failure to disclose

negotiations that resulted in a significant increase in that stock's value.  Presently before

this Court are Defendant Klick's Motion to Dismiss or Transfer Venue, as well as Defendant

Kegler and CollaborateMD's Motion to Dismiss for Improper Venue or, in the Alternative,

to Transfer Venue.[1]  For the reasons discussed below, Defendants' motions are granted

---

[1] In support of his Motion to Dismiss or Transfer Venue, Defendant Klick filed a Memorandum of
Law; the Declaration of Stephen Klick; and a Reply Memorandum.  (Docket Nos. 10, 22.)  Defendant
Kegler and CollaborateMD, in support of their Motion to Dismiss for Improper Venue or Transfer Venue,
filed a Memorandum of Law; the Affidavit of Cynthia L. Thompson, Esq., with attached Exhibits; the
Affidavit of Douglas Kegler; an Amended Memorandum of Law; and a Reply memorandum.  (Docket Nos.

to the extent they seek transfer and denied as moot to the extent they seek dismissal.

## II. BACKGROUND

A.    **Facts**

In adjudicating Defendants' motions to dismiss, this Court assumes the truth of the following factual allegations contained in the complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997). Plaintiffs Meszaros and Fritzinger are residents of Erie County, New York and former minority shareholders and directors of CollaborateMD.  (Complaint ("Comp."), Docket No. 1, ¶¶ 2, 12.)  CollaborateMD is a closely-held Florida corporation with its principal place of business in Orlando Florida, engaged in the business of providing clients with medical billing software.  (Id. ¶ 3; Memorandum of Law in Support of Defendant Stephen Klick's Motion to Dismiss or for Transfer of Venue ("Klick Mem."), Docket No. 10, 2.)  Defendant Stephen Klick is a resident of Minnesota and stockholder, director, and officer of CollaborateMD.  (Comp. ¶ 5.)  Defendant Douglas Kegler is a resident of Florida and is also a stockholder, director, and officer of CollaborateMD.  (Id. ¶ 4.)

In March or April of 2009, Defendants ordered an appraisal of CollaborateMD's assets and stock.  (Comp. ¶ 15.)  Following this appraisal, Defendants offered to purchase Plaintiffs' stock at a price of $1.15 per share.  (Id. ¶ 16.)  The stock was valued at $.95 per share as of May 2009.  (Id. ¶ 41.)  Plaintiffs accepted Defendants' offer and completed the

11, 12, 23.)
            In opposition to these motions, Plaintiff filed a Memorandum of Law; the Affidavit of Robert Fritzinger with attached Exhibits; the Affidavit of Laszlo Meszaros; the Amended Affidavit of Robert Fritzinger with attached Exhibits; and the Amended Affidavit of Laszlo Meszaros.  (Docket Nos. 15, 16, 17, 19, 20.)

sale on June 11, 2009.  (Id. ¶¶ 17, 19.)  The same day, a press release by CollaborateMD announced the signing of an agreement between it and 3M Health Information Systems ("3M").  (Id. ¶ 20.)  This agreement would make certain coding content available to CollaborateMD and would allow its customers to access current and historic Medicare and select Medicaid datasets.  (Id. ¶ 26.)  As a result of this agreement, CollaborateMD's share price tripled to approximately $3.00 per share.  (Id. ¶ 47.)

Plaintiffs allege that throughout the sale negotiations between Plaintiffs and Defendants, Defendants were aware of, and withheld information relating to, the agreement between CollaborateMD and 3M.  (Id. ¶¶ 38-39.)  Defendants allegedly did so in order to acquire Plaintiffs' shares at a reduced price, prior to the expected increase in the stock's value as a result of the agreement with 3M.  (Id. ¶ 45.)

## B.    Procedural History

On the basis of these events, Plaintiffs commenced this action on August 28, 2009 by filing a complaint in the United States District Court for the Western District of New York. On October 21, 2009 both Defendant Klick, and Defendants Kegler and CollaborateMD, separately filed the present motions to dismiss or transfer venue.

## III.  DISCUSSION

## A.    Defendants' Motion to Dismiss for Improper Venue

Plaintiffs bear the burden of showing that venue in this district is proper.   City of New York v. Cyco.net, Inc., 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005).  In their complaint, Plaintiffs allege that venue is proper pursuant to 28 U.S.C. § 1391(b) because the claims arose in the Western District of New York.  Defendants move to dismiss.

28 U.S.C. § 1391(b) states that for any civil action wherein jurisdiction is not founded solely on diversity of citizenship, venue will be proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Defendants argue that they neither reside nor transact business in New York. Defendants also argue that no acts or transactions relating to Plaintiffs' claims were performed in the forum jurisdiction because, although Plaintiffs' received the alleged misrepresentations in New York, the misrepresentations were actually made in Florida or Minnesota, the respective residences of Defendants Kegler and Klick. Plaintiffs respond that receiving communications constituting violations of Securities Exchange law is sufficient to satisfy venue requirements. Plaintiffs also argue that Defendants Kegler and CollaborateMD transacted business in New York by developing and testing a medical billing system and because CollaborateMD has various customers throughout New York, including the Western District of New York.

At the outset, the Court notes that where, as here, security law claims are brought under the Securities Exchange Act, venue is exclusively controlled by 15 U.S.C. § 78aa. SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 452 (S.D.N.Y. 2003). "Where there are state claims asserted in addition to securities law claims governed by the venue provisions of § 78aa, a finding that venue is appropriate with regard to the securities law claims is sufficient to establish venue with regard to all claims." Id. (citing Greenwood Partners v. New Frontier Media Inc., No. 99-9099, 2000 WL 278086, at *8 (S.D.N.Y. Mar.

4

14, 2000).  Under 15 U.S.C. § 78aa, "venue lays in any district where (1) 'the defendant is found,' (2) the defendant 'is an inhabitant,' (3) the defendant 'transacts business,' or (4) 'any act or transaction constituting the violation occurred.'"  Blass v. Capital Int'l Sec. Group, No. 99-CV-5738, 2001 WL 301137, at *3 (E.D.N.Y. Mar. 23, 2001) (quoting 15 U.S.C. § 78aa).  As to the last, "any non trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue."  SST Global Tech., LLC, 270 F. Supp. 2d at 453 (quoting Greenwood Partners, 2000 WL 278086, at *6 ).

Here, the parties do not dispute that the alleged violations occurred during various telephonic meetings of CollaborateMD's Board of Directors.  During these conversations, Plaintiffs were in the Western District of New York, while Defendants were in Florida and Minnesota.  Although Defendants argue that misrepresentations occur only where they are made, not where Plaintiffs hear or see them, numerous courts have found that "any act or transaction constituting the violation" is broad enough to include the place where communications are received.  See, e.g., In re Geopharma, Inc., No. 04 Civ. 9463(SAS), 2005 WL 1123883, at *1 n.12 (S.D.N.Y. May 11, 2005) ("[B]ecause GeoPharma was a publicly traded company on the NASDAQ National Market and the alleged misstatements were widely disseminated and defrauded a nationwide class, plaintiffs could theoretically have brought suit under section 27 in any district in the United States."); SST Global Tech., LLC, 270 F. Supp. 2d at 453-54 (venue proper in district where plaintiff received phone calls and participated in meetings); Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher, 617 F. Supp. 308, 310-11 (E.D. Pa. 1985) (correspondence and telephone calls received in Pennsylvania office constituted acts or transactions for venue purposes under § 78aa).

5

Although courts routinely transfer cases to the forum where the principal events occurred, especially in the context of securities litigation, this is not enough to render venue improper.  See In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (finding locus of operative facts where contract was entered, rather than where stocks were purchased, but noting that §78aa would permit suit in any such district). Because Plaintiffs allege they received communications containing misrepresentations or omissions in violation of Securities Exchange law, they have properly pled facts sufficient to find venue in this district.

In their Reply Memorandum, Defendants Kegler and CollaborateMD raise a new argument to the effect that venue is improper because all alleged misrepresentations occurred after Plaintiffs accepted offers to sell their shares for $1.15 per share.  (Reply Memorandum of Law in Further Support of the Motion of Defendants Douglas Kegler and CollaborateMD, Inc. to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue, Docket No. 23, 5-6.)  Defendant Klick made an offer to purchase shares of CollaborateMD stock at $1.15 per share on April 12, 2009.  (See Amended Affidavit of Robert H. Fritzinger ("Fritzinger Aff."), Docket No. 19, ¶ 10.)[2]  Plaintiffs conveyed their intent to accept this offer on April 28, 2009.  (See id. ¶ 12.)  The affidavits go on to describe several meetings after this date at which Defendants allegedly withheld information from Plaintiffs.

As a preliminary matter, this Court rejects Defendants' efforts to frame the sale as closed as of April 12, 2009.  Corporate minutes from meetings after Plaintiffs' alleged

---

[2]Plaintiffs' affidavits largely mirror each other's language in relevant part.  Because Plaintiffs have attached their supporting exhibits to Plaintiff Fritzinger's affidavit, this Court will cite to that document.

acceptance of Defendants' offer reflect continuing discussions including, for example, whether the corporation would exercise its right of first refusal. (Id. Ex. F.) Other exhibits show that Defendants also conducted an appraisal of the fair market value of the stock following Plaintiffs' acceptance. Consequently, the fact that a number of the meetings occurred after April 28, 2009 is not sufficient for this Court to find venue improper. This Court also notes that Defendants and 3M had allegedly been in negotiations for several months prior to the announcement of the agreement on June 11, 2009. Defendants knew the deal would conclude successfully, and at no point prior to completing the purchase of Plaintiffs' shares did Defendants disclose this fact. (Comp. ¶¶ 22, 24, 25, 38.) Consequently, this Court cannot agree that venue is improper merely because Plaintiffs' affidavits describe meetings after they affirmatively responded to Defendant Klick's offer.

Accordingly, Defendants' Motions to Dismiss for improper venue will be denied.

## B. Defendants' Motion to Transfer

Defendants also move that this case should be transferred to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The primary goal of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Continental Grain Co v. Barge FBL-585, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960). In this case, the parties do not dispute that this action could have been brought in the Middle District of Florida. The parties disagree over whether the interests of justice and convenience of the

7

witnesses and parties compel transfer.

In determining whether the interests of justice and convenience support transfer, district courts evaluate nine factors. Those factors include: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice. Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F.Supp.2d 282, 285-86 (S.D.N.Y. 2004). Courts have broad discretion in making determinations of convenience under section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). However, absent a strong showing that the balance of factors favors the alternative forum, the plaintiff's choice of forum will not be disturbed. Roland v. Hargi Sys., Inc., No. 00-CV-341, 2001 WL 241792, at *4 (W.D.N.Y. Feb. 28, 2001) (citing R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991)). This is especially the case where, as here, Congress granted plaintiffs the widest possible choice of forums in which to sue. Stanley Works v. Kain, 833 F. Supp. 134, 137 (D. Conn. 1993).

With these principles in mind, this Court will address the factors governing a motion to transfer based upon the affidavits and other submissions of the parties.

### 1. Convenience of the Witnesses

Defendants argue that this factor weighs in favor of transfer because the only significant non-party witnesses are the appraiser from whom CollaborateMD allegedly

8

withheld information concerning negotiations with 3M, and Joe Larter, a member of CollaborateMD's Board of Directors who was present at the meetings during which the allegedly fraudulent statements and omissions were made.  (<u>See</u> Klick Me. 7; Amended Memorandum of Law in Support of Defendants Douglas Kegler and CollaborateMD, Inc.'s Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue ("Kegler Mem."), Docket No. 12, 7.)  On the basis of Defendants' affidavits, the third-party appraiser resides in Jacksonville, Florida, while Mr. Larter lives in England, but maintains a second residence in Fort Pierce, Florida.   Plaintiff responds that the only actual non-party witnesses are the parties' respective valuation experts.    (Memorandum of Law in Opposition to Defendants' Motions to Dismiss or for Transfer of Venue ("Pls.' Opp'n"), Docket No. 15, 9, 11.)

"The convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted."  <u>Wagner v. New York Marriot Marquis</u>, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) (internal quotation marks and citation omitted).   Courts accord non-party witnesses greater weight than party witnesses.  <u>ESPN, Inc. v. Quiksilver, Inc.</u>, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).  In order to demonstrate the alleged inconvenience, the "party moving to transfer on the ground that witnesses will be inconvenienced is obliged to 'name the witnesses who will be appearing and describe their testimony.'"  <u>Beatie & Osborn LLP v. Patriot Scientific Corp.</u>, 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (citing <u>Schieffelin & Co. v. Jack Co. of Boca, Inc.</u>, 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989)).  But in cases where discovery has not been conducted, a party "will not be held to the requirement of stating with precision each witness and document."  <u>Heyco, Inc. v. Heyman</u>, 636 F. Supp. 1545, 1549-50

(S.D.N.Y. 1986).

Defendants have identified two non-party witnesses.  Although Plaintiffs dispute whether these witnesses need to be called, a court "must evaluate the materiality of the testimony that the witnesses may provide."  Seltzer v. Omni Hotels, No. 09 Civ. 9115(BSJ)(JCF), 2010 WL 3910597, at *2 (S.D.N.Y. Sep. 30, 2010) (quoting Herbert Ltd. P'ship, 325 F. Supp. 2d at 286).  Here, CollaborateMD hired the firm of Sheldrick, McGehee & Kohler, LLC to prepare an appraisal of its common stock in early 2009. Although Plaintiffs argue that they "need not demonstrate that Defendants failed to disclose the 3M partnership to its valuation company" and that "the central dispute in this case is not whether Defendants defrauded Plaintiffs, but the measure of damages caused by that fraud," this Court finds that the third-party appraiser's testimony will likely be material to the present dispute.  Plaintiffs' complaint specifically alleges that "Mr Kegler and Mr. Klick failed to disclose and/or concealed the negotiations and agreement with 3M from the third party appraiser who conducted a valuation of CMD's stock in March or April of 2009 and who . . . reported a value of $0.95 per share for minority positions in CMD's stock." (Comp. ¶ 41.)  The complaint goes on to allege that the failure to disclose to the appraiser facilitated Defendants' purchase of Plaintiffs' stock at an undervalued price.  Accordingly, the appraiser's residence in Florida is relevant to whether this case should be transferred.

Defendants also identify Mr. Larter, a member of CollaborateMD's Board of Directors who could testify to the representations made regarding the terms of the sale. Although Plaintiffs deny that he is likely to be a witness, the Court recognizes that this litigation is at an early stage and that further discovery could necessitate his testimony.  It is disingenuous for Plaintiffs to assert that there would be no need to call, what appears

10

to be, the only other member of the board of directors to have witnessed all of Defendants'
allegedly fraudulent statements and omissions.

The only other non-party witnesses identified by the parties are their valuation
experts.  These experts are located, respectively, in their party's preferred forum.
However, the convenience of expert witnesses is of marginal significance.  Seltzer, 2010
WL 3910597, at *3 (quoting Wibau, Westdeutsche Industrie v. American Hoist & Derrick
Co., 293 F. Supp. 273, 275 (S.D.N.Y. 1968)).

The parties themselves are also likely to testify.  Although "the convenience of non-
party witnesses is accorded more weight than that of party witnesses," party witnesses are
still relevant.  ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).
Here, as further discussed below, either Plaintiffs or Defendants will be inconvenienced by
litigating outside their preferred forum.  However, this inconvenience will not be so great
as to sway the Court's decision for or against transfer to the Middle District of Florida.

Accordingly, and in consideration of the non-party witnesses, this Court finds that
this factor weighs in favor of transfer.

### 2.      Convenience of the Parties

Defendants argue that Plaintiffs have previously visited Florida for various corporate
meetings, and that therefore litigating there would be less burdensome.  (Klick Mem. 8;
Kegler Mem. 8.)  Plaintiffs respond that Defendants have previously conducted business
in upstate New York and CollaborateMD has several customers in this district.  (Pls.' Opp'n
10.)

Courts find this factor to weigh in favor of transfer when the "inconvenience [to the
moving party] could be completely eliminated without substantially adding to the non-

moving party's inconvenience." <u>Farrior v. George Weston Bakeries Distribution, Inc.</u>, No. 08-CV-2705, 2009 WL 113774, at *6 (E.D.N.Y. Jan. 15, 2009) (citing <u>Frame v. Whole Foods Market, Inc.</u>, No. 06-CV-7058, 2007 WL 2815613, at *6 (S.D.N.Y. Sep. 24, 2007)). "Where the transfer would merely shift the inconvenience from one party to the other, the Court should leave the plaintiff's choice of venue undisturbed." <u>Id.</u> at *6 (citing <u>Wagner</u>, 502 F. Supp. 2d at 316).

Here, both parties would be equally inconvenienced by litigating outside their preferred forum. Neither side has identified any facts that would clearly make one forum more convenient overall. Plaintiffs have attended a few meetings in Florida, and one of them allegedly owns a residence in Florida. Defendants have had business dealings in New York. The Court is not persuaded that any of these contacts would substantially ease the burden of litigation for either side sufficiently to sway this factor decisively in favor of one or the other. Consequently, the Court agrees with Plaintiffs that this factor is neutral.

### 3.     The Location of the Relevant Documents

The parties concede that this factor is of minimal importance. Although all relevant documents are located in the Middle District of Florida, Plaintiffs, by virtue of their prior board membership, have copies of most of these documents. "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." <u>Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge N. Am., Inc.</u>, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Accordingly, the Court finds this factor is neutral.

### 4.     The Locus of the Operative Facts

Defendants argue that the alleged misrepresentations were made in Florida, making Florida the natural locus of operative facts.  Plaintiffs respond that this factor is neutral because meetings took place by telephone.  The sale of the stock itself involved not only Florida, but also New York, where Plaintiffs resided, Minnesota, where Defendant Klick resided, and California, from where wire transfers were executed.

In the context of § 1404(a), cases are routinely transferred to where the "principal events occurred and the principal witnesses are located." In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d at 404.    "[M]isrepresentations or omissions occur 'where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." In re Connetics, No. 06 Civ. 11496(SWK), 2007 WL 1522614, at *5 (S.D.N.Y. May 23, 2007) (quoting In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006)).  In the context of securities litigation, courts typically convey significant weight to the location of the alleged misrepresentations or omissions. See, e.g., In re Global Cash Access Holdings, Inc. Sec. Litig., No. 08 Cv. 3516(SWK), 2008 WL 4344531, at *6 (S.D.N.Y. Sep. 18, 2008) (locus of operative facts was where misleading registration statements were issued); In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d at 397 (locus of operative facts was where public disclosures were made); In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d at 404 (locus of operative facts not where stock was purchased, but where financial statements originated).

Plaintiffs describe three meetings during which Defendants made fraudulent misrepresentations or omissions.  On March 15, 2009, Plaintiffs attended CollaborateMD's annual board meeting in Florida.  (See Fritzinger Aff. ¶ 16.)  On May 31, 2009, Plaintiffs

13

telephonically attended a board meeting to discuss their sale of shares. (Id. ¶ 18.) On June 1, 2009, Plaintiffs, again by telephone, attended a board meeting to further discuss the sale of their shares. (Id.) Except for the first meeting, for which Plaintiffs actually traveled to Florida, Plaintiffs could easily have attended the May 31 or June 1 meetings by calling from any state, much as Defendant Klick called from Minnesota. As a result, New York's connection to the fraudulent acts alleged is minor. See In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (noting that plaintiffs' preferred forum bore no more connection to New York than any other state where fraudulent acts were alleged to have occurred); Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 230 (D.N.J. 1996) ("New Jersey has no greater connection with the case than any other jurisdiction in which any potential class member resides.") To the extent Plaintiffs' assertions are correct, Defendants' fraudulent statements would have issued from CollaborateMD's corporate headquarters in Florida. In addition, to the extent Defendants made the decision to withhold information regarding the ongoing negotiations with 3M from Plaintiffs, those decisions would also have been made at CollaborateMD's headquarters in Florida. Finally, the third-party appraisal of CollaborateMD's stock also took place in Florida. See In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d at 404 (independent audits transpired in transferee district).

In consideration of these facts, this factor weighs strongly in favor of transfer.

## 5. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Neither party appears to place great weight on this factor, given the limited number of parties and witnesses involved. This Court agrees that this factor is largely neutral in

light of the absence of non-party witnesses whose attendance this Court would need to compel.  See Beatie & Osborn LLP, 431 F. Supp. 2d at 397-98; Beckerman v. Heiman, No. 05-CV-5234, 2006 WL 1663034, at *8 (S.D.N.Y. Jun. 16, 2006) (factor did not favor either party where neither demonstrated unavailability of non-party witnesses).  To the extent this factor is relevant, the Middle District of Florida is a better forum because it could compel the attendance of the third-party appraiser, whose residence is in Jacksonville, Florida. Accordingly, this factor weighs slightly in favor of transfer.

### 6.  The Relative Financial Means of the Parties

Neither party is without the means to prosecute this action.  Blass, 2001 WL 301137, at *6 (courts should consider relative means of parties where apparent disparity exists between them).  Plaintiffs are former board members and Defendants are, or are part of, a corporation with a nationwide customer base.  Plaintiffs have argued that CollaborateMD has at least $1 million in cash reserves, and would likely reimburse Defendants Klick and Kegler for their litigation costs.  Plaintiffs have also, however, described the company as "a small, closely held corporation with modest historical earnings."  (Pls.' Opp'n 9.)  Accordingly, this Court finds this factor to weigh only slightly against transfer.

### 7.  The Comparative Familiarity of Each District with the Governing Law

There is no dispute that this Court and the United States District Court for the Middle District of Florida will have equal competency in adjudicating Plaintiffs' federal securities claim. In re Connetics, 2007 WL 1522614, at *8 (citing In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d at 398.  Nor is there a dispute that whatever court hears

this action will be a proper venue for Plaintiffs' state law claims.  See SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 452 (S.D.N.Y. 2003) (establishing venue for securities law claim also establishes venue for accompanying state law claims).  The parties do dispute whether New York or Florida law will govern Plaintiffs' state law claims.

The complaint alleges state law claims for fraud, breach of a fiduciary duty, breach of contract, breach of an implied covenant of good faith and fair dealing, unjust enrichment, indemnification, and quantum meruit.  Plaintiffs allege these claims under New York law, in their Second, Third, Fourth, and Fifth causes of action, as well as under generic "state law" in their Sixth, Seventh, Eighth, and Ninth causes of action.  Defendants argue that a choice of law analysis results in the application of Florida law.  (Klick Mem. 21.)  Plaintiffs respond that Defendants misapply New York's choice of law rules.

The Court finds that the question of what law controls Plaintiffs' state law claims has not been fully briefed.  Defendant Kegler's brief asserts that "[t]here is no dispute that Florida law applies to the indemnification, unjust enrichment, breach of contract, and quantum meruit claims."  (Kegler Mem. 10.)  Meanwhile, Defendant Klick seeks to apply New York's interest analysis test to Plaintiff's state law claims.  (Klick Mem. 21-22.)  Neither brief fully addresses the choice-of-law issues involved.

"A federal district court applies the choice-of-law rules of the State in which it sits." Grund v. Del. Charter Guarantee & Trust Co., No. 09 Civ. 8025, 2011 WL 2118754, at *11 (S.D.N.Y. May 26, 2011) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).  The first step in applying New York's choice of law rules is to determine whether there is an actual conflict between the laws of the states involved. See In re Allstate Ins. Co., (Stolarz), 81 N.Y.2d 219, 223, 613 N.E.2d 936, 937 (1993).

If no conflict exists, a court applies the laws of the forum state in which the action is heard. Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006).

Defendants do draw this Court's attention to the existence of some conflicts between the laws of Florida and New York. For example, as to Plaintiffs' unjust enrichment claim, Defendants argue that whereas in New York a plaintiff could assert both a breach of contract claim and an unjust enrichment claim concurrently, this would not be possible under Florida law. (Klick Mem. 9 n.6); see also Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc., 773 F. Supp. 2d 1317, 1323 (M.D. Fla. 2011) (noting different statutes of limitations for unjust enrichment claims under New York and Florida law). The Courts own research indicates that, as to other claims, there may be no conflict at all. See Cohen v. Sudler & Hennessey, LLC, No. 10 Civ. 4321(DLC), 2010 WL 3431534, at *2 n.2 (S.D.N.Y. Aug. 31, 2010) (finding no conflict between New York and Florida law as to fraud claim).

To the extent that Florida and New York might conflict, the Court agrees that Florida law would control. To determine what law applies in a tort action, New York courts conduct an "interest analysis," which gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." DaSilva v. C & E Ventures, Inc., 922 N.Y.S.2d 32, 35 (N.Y. App. Div. 2011). When laws regulating conduct are in conflict the law of the state where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 522, 644 N.E.2d 1001, 1002 (1994). As already discussed, the Court finds that the fraudulent statements alleged were made in Florida.

17

See Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank, No. 10 Cv. 2429(BSJ), 2011 WL 1226255, at *3 (S.D.N.Y. Mar. 23, 2011).  As a consequence, Plaintiffs' tort claims would be adjudicated under Florida law.

A similar result would follow for Plaintiffs' contractual claims.  New York choice of law rules apply a "grouping of contacts" theory to contractual claims.  Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 151 (2d Cir. 2008).  "The purpose of grouping contacts is to establish which State has the most significant relationship to the transaction and the parties." Id. (quoting Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994)) (internal quotation marks omitted).  As part of this analysis, a court considers the place of contracting, the places of negotiation and performance, the location of the subject matter, the domicile or place of business of the contracting parties, and, where relevant, the governmental interests involved.  Here, negotiations occurred in Florida, at the May 31 and June 1 board meetings.  Although the sale was between Defendant Klick, a resident of Minnesota, and Plaintiffs, residents of New York, Defendants' alleged misrepresentations, and CollaborateMD's inclusion as a defendant, make Florida the state with the most significant relationship to the transaction because it is the nexus of the parties' interactions and agreements.

Despite these preliminary conclusions, the Court has noted that the parties have not clearly addressed the choice of law issues involved, and as a result can only find this factor to weigh slightly in favor of transfer.

### 8.    The Weight Afforded to Plaintiffs' Choice of Forum

Plaintiffs argue that this factor militates against transfer because their choice of forum is entitled to "substantial deference."  (Pls.' Opp'n 9.)  The Court agrees that,

ordinarily, a plaintiff's choice of forum is accorded relatively greater importance than other facts, especially where, as here, Congress has provided plaintiffs a broad range of forums. Stanley Works, 833 F. Supp. at 137. However, although Plaintiff's choice of forum is entitled to significant deference, this factor is no longer given the "near-decisive weight" previously afforded under the predecessor of 28 U.S.C. § 1404(a), forum non conveniens. See HGI Mktg. Servs., Inc. v. Pepsico, Inc., No. 92-CV-981, 1992 WL 349675, at *4 (N.D.N.Y. Nov. 11, 1992) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 91 L. Ed. 1055, 67 S. Ct. 839 (1947)); see also Vasallo v. Niedermeyer, 495 F. Supp. 757, 759 (S.D.N.Y. 1980). Further, "the emphasis placed by a court on [plaintiffs'] choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum." Eslworldwide.com, Inc. v. Interland, Inc., No. 06 CV 2503(LBS), 2006 WL 1716881, at *4 (S.D.N.Y. June 21, 2006) (quoting In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d at 405). Under those circumstances, the importance of a plaintiffs' choice of forum is significantly diminished. See Harris v. Brody, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007).

As previously discussed, the operative facts occurred in Florida. The only connection between this action and New York is that Plaintiffs were in New York when they telephonically participated in CollaborateMD's Board of Directors meetings. Accordingly, this factor weighs only slightly against transfer because Plaintiffs' choice of forum is entitled to only some deference.

### 9. Judicial economy and the interests of justice

Defendants argue that judicial economy favors transfer, citing, in support, comparisons between the Western District of New York and Middle District of Florida's

19

median times from filing to disposition and the number and percentage of civil cases over three years old. (Kegler Mem. 11.) Plaintiffs respond that Defendants cannot meet their burden simply by submitting "the baldest of assertions in affidavits that swear to little more than the authenticity of downloaded Judicial Caseload Reports." (Pls.' Opp'n 8.) Finding itself relying on the same downloaded Caseload statistics, this Court is less antagonistic towards them than Plaintiffs. At the same time, the Court views those statistics more optimistically than do Defendants.

"Courts have measured docket congestion by considering the median disposition time to resolve a case or the comparative increase in cases over a 12-month period of time." Mola, Inc. v. Kacey Enterprises, LLC, No. 10-CV-1045S, 2011 WL 3667505, at *10 (citations omitted). Here, the dockets of the two courts, show little difference between them.[3] This Court's median disposition time to resolve a civil case, as measured over the 12-month period ending December 31, 2010, is 8.2 months, versus the Middle District of Florida's 8.0 months. Over the same 12-month period, this Court's civil and criminal filings have decreased 1.1% and increased 1.5%, respectively, while the Middle District of Florida's civil and criminal filings have both decreased 4% and 4.8%, respectively. These differences are not so significant as to weigh in favor of transfer. Accordingly, the Court finds this factor neutral.

. . .

After reviewing the relevant factors, the Court finds a balance of the nine factors

---

[3] See Administrative Office of the United States Courts, Federal Judicial Caseload Statistics 2010, available at http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/December2010. aspx (last visited October 19, 2011).

weighs in favor of transfer. The locus of operative facts is clearly in Defendants favor, and the deference typically given Plaintiffs' choice of forum is minimal. Defendants are charged with the fraudulent purchase of shares of two board members of a Florida corporation, which has its principal place of business in Orlando, Florida. The alleged misrepresentations were made during meetings of that board of directions which took place in Florida. That Plaintiffs were in New York at the time they telephonically participated in meetings in Florida does not shift the case's operative facts' "center of gravity" from Florida to New York. See In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d at 171. Furthermore, the non-party witnesses that have been identified reside, or have residences, in Florida. Similarly, any witnesses that may later be required will likely also be found in Florida. The countervailing factors are few and subject to negligible consideration. The financial means of the parties are not so far apart as to alter this result and Plaintiff's choice of forum does not prevail because Plaintiffs' chosen forum bears little relation to the fraudulent acts.

"While there is 'no per se rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered,' such transfers to the issuer's home district are routine 'as a practical matter.'" In re AtheroGenics Sec. Litig., No. 05 Civ. 00061, 2006 WL 851708, at *3 (Mar. 31, 2006) (quoting In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d at 168-69)). On review of the relevant factors, the Court finds that such a result is appropriate here. Because the balance of factors weighs in favor of transferring venue to the Middle District of Florida, Defendants' motions to change venue will be granted.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motions are granted to the extent they seek transfer.  Because the case will be transferred, Defendants' motions are denied as moot to the extent they seek dismissal on other grounds.

## V.  ORDERS

IT IS HEREBY ORDERED, that Defendant Stephen Klick's Motion to Dismiss or Transfer Venue (Docket No. 10) is GRANTED to the extent it seeks transfer of this case to the United States District Court for the Middle District of Florida, and is DENIED in all other respects as moot.

FURTHER, that Defendant Douglas Kegler and Defendant CollaborateMD, Inc.'s Motion to Dismiss or Transfer Venue (Docket No. 11) is GRANTED to the extent it seeks transfer of this case to the United States District Court for the Middle District of Florida, and is DENIED in all other respects as moot.

FURTHER, that the Clerk of the Court is directed to transfer this action to the United States District Court for the Middle District of Florida, and then close this case.

SO ORDERED.

Dated:   October 25, 2011
             Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court